McDonald, C. Brian, J.
The plaintiffs, Susan Allen and Joan Papazian, as co-executrixes of the estate of their mother, Katherine Allen, brought this action against their aunt, Jeanne O. Davis, individually and as the sole remaining trustee of the Lauredo Realty Trust (the Trust). Prior to her death in 2004, Katherine Allen had been co-trustee of the Trust and a 50% shareholder of beneficial interest in the Trust assets, with the defendant owning the other 50% of the shares. The Trust’s corpus consists of two parcels of undeveloped land totaling 21.35 acres in Southborough.
In this action, the plaintiffs seek to compel the defendant to comply with the terms of the Declaration of Trust and a related Share Transfer Agreement to liquidate Katherine Allen’s 50% interest in the Trust. The complaint seeks a declaration of the defendant’s obligations as trustee under the Declaration of Trust and as shareholder under the Share Transfer Agreement (Count I), and an order requiring the defendant to perform specifically her obligations as trustee under the Declaration of Trust and as a shareholder under the Share Transfer Agreement (Count II), and it alleges that the defendant breached her fiduciary duties as trustee (Count III) and that she is in breach of contract for failing to fulfill her obligations as a shareholder under the Share Transfer Agreement (Count IV). The plaintiffs now move for summary judgment on Count I of their complaint. For the following reasons, the motion is allowed in part and denied in part.

BACKGROUND

The following facts are taken from the summary judgment record.
On December 18, 1972, the defendant, her sister, Katherine Allen, and their mother, Laura Offutt, executed a Declaration of Trust naming themselves as trustees. The purpose of the Trust is to own and manage the Trust property “for the benefit of the holders of the certificates of beneficial interest” in the Trust. Under the terms of the Declaration of Trust, the trustees “shall have . .. the absolute control... of the trust property . . . subject only to the specific limitations contained in this Trust...” (Declaration of Trust ¶5.05.) Those limitations are that the trustees cannot bind the shareholders personally by any contract, act, neglect, or default. The Declaration of Trust shields trustees from personal liability for any act, neglect or default done in the course of the execution of the Trust or management of the Trust property in good faith, except that “each Trustee shall be liable only for his own willful act or default." (Declaration of Trust ¶¶5.07-5.08.) Any person injured by a Trustee’s non-willful or good faith act, neglect or default committed or omitted in the course of the trustee’s execution of *78 the Trust or management of the Trust property has recourse
for satisfaction, payment or indemnity solely to the Trust estate, and shall have no right whatsoever against the Trustees personally, except insofar as the law may require such personal liability and forbid the limitation thereof, and then only to the extent that the law requires such personal liability and forbids its limitation.
(Declaration of Trust ¶5.07.)
The Declaration of Trust extends the following immunity to shareholders:
[Shareholders shall not be personally liable on any contract made or for any act, neglect or default done, committed or omitted in the course of the execution of this Trust or the management of the trust property, and any party to any contract made or any person injured by any act, neglect or default done, committed or omitted in the course of the execution of this Trust or the management of the trust property shall have recourse for the satisfaction, payment or indemnity solely to the trust estate and shall have no right whatsoever against the shareholders personally.
(Declaration of Trust ¶6.08.) The Declaration of Trust is silent on whether a shareholder may be liable for willful or bad faith acts.
The Declaration of Trust instructs the trustees regarding termination of the Trust.
Within one year after the termination of this Trust by limitation or otherwise, the Trustees shall wind up the affairs of the Trust and sell or liquidate all the assets thereof receiving therefor either cash, bonds, notes or other obligations which will be paid off in cash, and after providing for, paying and satisfying all the obligations and liabilities of the Trust, shall divide the net proceeds among the shareholders ... All powers of the Trustees shall continue for this purpose.
(Declaration of TrustS17.01.)
On December 18, 1972, the defendant, Katherine Allen, and their brother, Edward Offutt, Jr., as the three shareholders, executed a Share Transfer Agreement. The Share Transfer Agreement imposes restrictions on the shareholders “in order to retain control of the said Realty Trust in the Offutt Family, and in order to provide an orderly method of purchasing shares of any shareholder who is deceased or who wishes to liquidate his interest in” the Trust. Under the original Share Transfer Agreement, if a shareholder wished to sell his or her shares, the other shareholders had to purchase the shares within six months. (Share Transfer Agreement ¶2.) In 1997, the shareholders amended that provision to extend the time to purchase shares from six months to three years. The Share Transfer Agreement further provided that
If any party dies owning shares of beneficial interest in the [Trust], all remaining parties who then own shares in the said Trust shall thereupon be obligated to purchase pro rata all shares owned by the deceased parly. Such purchase and sale shall take place within six months of the date of qualification of the deceased party’s legal representative.
(Share Transfer Agreement ¶3.) This six-month deadline was extended to three years under the 1997 amendment. The Share Transfer Agreement specifies how the parties must determine the Trust property’s fair market value.
The purchase price to be used in any purchase and sale of shares hereunder shall be the fair market value of such shares. Such fair market value shall be determined in part by an appraisal of any real estate owned by the Lauredo Realty Trust, as follows: the seller and the purchaser or purchasers shall each choose an appraiser and the appraisers so chosen shall jointly choose a third appraiser; the board of three appraisers shall agree on the fair market value of such real estate: if the three appraisers cannot so agree, the appraisal value of the neutral appraiser shall be deemed to be the value of such real estate.
(Share Transfer Agreement ¶4.) In the event that shareholders do not wish to purchase the shares of a selling shareholder, the Share Transfer Agreement provides an alternative course of action.
If all parties who are obligated to purchase shares hereunder in any one instance wish not to make such purchase, they may jointly agree to terminate the [Trust] . . . provided the Trustee of the said Trust and any other shareholders who are not parties hereto concur in such termination as therein provided. If all other necessary parties agree to terminate the said Trust, the selling shareholder or the legal representative of a deceased shareholder shall join in such agreement and the provisions hereof relating to purchase and sale of shares shall be of no further force and effect.
(Share Transfer Agreement ¶6.)
In 1994, only Katherine Allen and the defendant remained as trustees and each owned 50% of the shares of beneficial interest in the Trust. On June 27, 2003, Katherine Allen gave written notice to the defendant of her intention to sell all of her shares (“the Allen shares") in the Trust. At that time, the defendant knew that the Trust property was worth over $2 million.
In December 2004, Katherine Allen passed away. Since then, the plaintiffs, as executrixes of Katherine Allen’s estate, have made it clear to the defendant that they wish to liquidate their mother’s interest in the Trust.
The 21.35 acres owned by the Trust consist of a 17.96-acre parcel and a 3.39-acre parcel. In 2005, the plaintiffs obtained an appraisal of $2,200,000 on the *79 17.96-acre parcel. The appraiser presumed that there were only nine buildable lots, based on percolation tests conducted in December of 2004 on a limited and unspecified portion of the Trust property.
In January 2006, the defendant’s appraiser valued both parcels together at $2,760,000, and assumed that there were twelve buildable lots on the Trust property. At that time, the defendants had not had any percolation testing done to enable a delineation of lots and a determination of the number of buildable lots.
In 2006, the defendant offered to purchase the Allen shares for half of $2,760,000, but only after selling some of the lots with frontage on roads, and with those sales commencing in 2010. The defendant states in an affidavit that she would prefer to sell the lots over the course of three to four years, beginning in 2010, in order to avoid negative tax consequences. The plaintiffs rejected this offer.
In late 2006 or in 2007, the defendant retained an engineer to draw a plan showing three lots on the Trust’s smaller parcel. The defendant has had percolation testing done on one of those three lots. In her deposition in October 2007, the defendant stated that she did not agree to have additional percolation testing done on the remainder of the property because it is too expensive and because she and her children would prefer not to have the land developed, or in her words, “not have bulldozers and people up in back of us.’’ (Davis Dep. pp. 54-57, 65-66.) In contrast, the plaintiffs insisted that the entire Trust property undergo percolation testing and engineering work in order to determine the fair market value of not only the lots fronting on roads, but also the interior lots.
The defendant fears that taking additional steps toward selling lots, such as submitting a plan to the Town of Southborough delineating frontage lots, would trigger a reclassification of the lots from agricultural use to another category which would result in an increase in real estate taxes. Without selling any of the property, the defendant lacks sufficient funds to be able to purchase the Allen shares. The defendant has taken no steps to terminate the Trust.

DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). As noted above, the plaintiffs move for summary judgment only with respect to their claim for declaratory judgment. In their complaint, filed in April of 2007, the plaintiffs sought a judgment declaring that under the Declaration of Trust and the Share Transfer Agreement, the defendant is obligated, inter alia, to: (1) take all actions necessary to permit percolation testing and engineering work on the entirety of the Trust property; (2) share the costs of such testing and engineering work with the plaintiffs; and (3) purchase the Allen shares promptly upon completion of the percolation testing and engineering work and determination of the fair market value of the property, or, alternatively, to terminate the Trust, liquidate the assets of the Trust promptly and for their fair market value, and distribute the net proceeds promptly to the defendant and to the plaintiffs as co-executrixes of Katherine Allen’s estate.
Nothing in the Declaration of Trust or the Share Transfer Agreement requires or even mentions percolation testing and engineering work as necessary for a determination of the fair market value of the Trust property. The plaintiffs have, in their motion for summary judgment, abandoned that part of their claim for declaratory judgment and now focus on and expand upon the alternative relief sought in Count I; termination of the Trust. In their summary judgment motion, the plaintiffs seek declarations that: (1) the defendant was contractually obligated under the Share Transfer Agreement to purchase the Allen shares by June 27, 2006; (2) having failed to purchase the Allen shares within the three-year period, the defendant was required to terminate the Trust; (3) the defendant’s failure to terminate the Trust constitutes a continuing breach of contract and a breach of her fiduciary duiy as the sole trustee of the Trust; and (4) the defendant is obligated to terminate the Trust forthwith and within one year of such termination, to wind up the affairs of the Trust, liquidate the assets of the Trust, satisfy the obligations of the Trust, and then distribute 50% of the net proceeds to the plaintiffs as co-execu-trixes of the estate of Katherine Allen. The plaintiffs’ summary judgment motion seeks far more than the declaratory relief sought in Count I, and cannot transform Count I into claims for specific performance and liability determinations as sought in Counts II, III and IV.
Pursuant to the Share Transfer Agreement, Katherine Allen’s notice, dated June 27, 2003, that she wished to sell all of her shares in the Trust unequivocally required the defendant, as the only other shareholder, to purchase the Allen shares by June 27,2006, unless the defendant agreed to terminate the Trust, which she did not do. The Share Transfer Agreement terms governing these two options are not materially ambiguous, inconsistent, or vague. The express purpose of the Share Transfer Agreement is to enable an orderly liquidation of a shareholder’s beneficial interest in the Trust assets once that shareholder gives notice of her intent to sell. Although the defendant has not had the financial means to purchase the Allen shares, nothing — including the plaintiffs’ demands for percolation testing and engineering work — has prevented the defendant from agreeing to terminate the Trust. The defendant has failed to fulfill either of the alternative obligations imposed on her as a shareholder under the Share Transfer Agreement in response to Katherine Allen’s notice of her intention to sell her shares. The defendant’s proposed alternatives, *80 including a deferment of the sale of the lots and her purchase of the Allen shares until 2010 (and later) are not permitted under any reading of the Share Transfer Agreement and directly contravene its goal.
As trustee, the defendant is required by the Declaration of Trust to own and manage the Trust property for the benefit of the shareholders, including the plaintiffs, as executrixes of the estate of Katherine Allen. The defendant cannot ignore her obligations as a shareholder and then, as trustee, manage the Trust assets in such a way as to advance her own interests, such as keeping the Trust land undeveloped, while blocking the plaintiffs’ entitlement to an orderly liquidation of the Allen shares. In these circumstances, the defendant as trustee is obligated to terminate the Trust in order to avoid defeating the clear core purposes of both the Declaration of Trust and the Share Transfer Agreement. Cf. Copp v. Worcester County National Bank, 347 Mass. 548, 551 (1964) (“a court of equity may control a trustee in the exercise of fiduciary discretion if it acts beyond the bounds of a reasonable judgment or unreasonably disregards usual fiduciary principles, or the purposes of the trust, or if it fails to observe standards of judgment apparent from the applicable instrument”).
None of the defendant’s arguments in opposition to the plaintiffs’ motion for summary judgment have merit. The defendant first argues that this action is barred because the Declaration of Trust provides that the death of a shareholder or a trustee shall not entitle the legal representative of the shareholder or trustee to “take any action in the courts or elsewhere against the other shareholders or Trustees.” (Declaration of Trust ¶7.04.) Nothing in the summary judgment record suggests that the plaintiffs brought this action because of Katherine Allen’s death, but instead to enforce the terms of the Declaration of Trust and the Share Transfer Agreement with respect to Katherine Allen’s notice, on June 27, 2003, of her intent to sell her beneficial interest in the Trust.
Nor has the defendant shown that this action is precluded by the Declaration of Trust provisions shielding trustees and shareholders from personal liability. Those provisions do not bar claims, but only limit trustees’ personal liabilfiy to claims for conduct which is willful or in bad faith, and they otherwise permit damages, if awarded, to be paid out of the Trust assets. This action, therefore, proceeds either way. Moreover, because the declaratory judgment claim at issue in the summary judgment motion seeks a declaration of the defendant’s obligations, but not a determination of her liability, the personal liability provisions in the Declaration of Trust have no bearing on the outcome of the motion before the Court.
The defendant next contends that she is relieved from complying with the terms of the Share Transfer Agreement because the plaintiffs rejected her offer to purchase the Allen shares for half of the amount of the defendant’s appraisal. The problem with this argument is that the defendant’s offer was not based upon a valid assessment of the property’s fair market value. Pursuant to the Share Transfer Agreement, the defendant’s appraiser and the plaintiffs’ appraiser must select a third appraiser and try to agree on the fair market value of the property. If these three appraisers do not so agree, the appraisal value of the third neutral appraiser is deemed to be the value of the property.
Even if, as the defendant asserts, the flawed appraisal were the fault of the plaintiffs’ unreasonable demand for pre-appraisal percolation testing, the defendant’s offer is nonetheless invalid because it called for delaying liquidation of the Allen shares for at least four more years past the date of the offer, which came nearly three years after Katherine Allen’s notice of her intent to sell. Because the defendant’s offer did not comport with the terms of the Share Transfer Agreement, the plaintiffs’ rejection was not in breach of the Share Transfer Agreement and the defendant is not relieved of her obligations as trustee and shareholder.[3]

ORDER

For the foregoing reasons, the Plaintiffs’ Motion for Summary Judgment is ALLOWED insofar as follows.
It is DECLARED that: (1) under the Stock Transfer Agreement, Jeanne Davis, as shareholder, was obligated, on or before June 27, 2006, to purchase all of the shares of beneficial interest in the Lauredo Realty Trust held by Katherine Allen and offered for sale by her or to agree to termination of the Lauredo Realty Trust; and (2) under the Declaration of Trust, Jeanne Davis, having failed as shareholder to purchase the said shares of Katherine Allen and having failed to agree to termination of the Trust, as trustee was obligated to terminate the Trust and liquidate its assets.
In all other respects, the Plaintiffs’ Motion for Summary Judgment is DENIED.

 The defendant also suggests that the Trust “may well be one in name only and invalid due to the doctrine of indefiniteness." The defendant implies through references to non-authoritative and inapposite case law that the Trust may be void because, in the defendant’s view, it gives the trustees absolute power to manage the Trust assets. This argument fails because the Declaration of Trust does not confer limitless power or discretion upon trustees. Instead, it requires trustees to manage the Trust assets for the benefit of the shareholders, it requires the trustees to perform certain tasks within one year after termination of the Trust, and it prohibits the tmstees from binding the shareholders personally by any contract, act, neglect or default.